UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBERTO GRAU,
        Petitioner,

v.                           Case No: 6:19-cv-251-Orl-41KRS

HELEN GRAU,
        Respondent
_____/

## VERIFIED MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b) AND INCORPORATED MOTION FOR INDICATIVE RULING PURSUANT TO FED. R. CIV. P. 62.1

Petitioner, ROBERT GRAU, files this his motion for relief from the judgment of this Court denying his Verified Petition for the Return of his Children to Germany, the "Order," pursuant to Rule 60(b), Fed. R. Civ. P., and asks this Court for an indicative ruling pursuant to Fed. R. Civ. P. 62.1, as follows:

### JURISDICTION OF THIS COURT TO CONSIDER THIS MATTER

Pursuant to Federal Rule of Civil Procedure 60(b) a party may seek review of an unfavorable judgment or order directly from the district court. Specifically, Fed. R. Civ. P. 60(b) allows a party to seek relief from a final judgment, order or proceeding directly from the district court judge in the following circumstances:

Fed. R. Civ. P. 60(b)(1): Mistake, inadvertence, surprise, or excusable neglect;

Fed. R. Civ. P. 60(b)(2): Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Fed. R. Civ. P. 59(b):

Fed. R. Civ. P. 60(b)(3): Fraud (whether previously called intrinsic or extrinsic), misrepresentation or misconduct by an opposing party;

Fed. R. Civ. P. 60(b)(4): The judgment is void;

Fed. R. Civ. P. 60(b)(5): The judgment has been satisfied, released or discharged; it is based upon an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;

Fed. R. Civ. P. 60(b)(6): Any other reason that justifies relief.

<u>The district court has the discretion to grant relief under any of the above sections as justice requires.</u>

Typically, a "perfected appeal divests the district court of jurisdiction." However, Fed. R. Civ. P. 62.1 provides the district court with the ability to render an indicative ruling as follows: If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

2

Petitioner argues as follows: Respondent manifested a clear and convincing intent at trial to misrepresent the facts of certain evidentiary matters to the Court. Respondent acted with an intent to deceive or defraud the Court, by means of her deliberately planned and carefully executed scheme to mislead the Court as to the Petitioner's conditional consent regarding the family's "dream" to live in the United States. The misrepresentations to the Court and her secret plan to divorce the Petitioner prohibited him from properly presenting his case and prevented the Court from considering all relevant matters. There is newly discovered evidence that Petitioner has obtained through the exercise of his due diligence; it is not merely cumulative nor merely impeaching; the evidence is material and germane to conclusions made by the Court; and Petitioner verily believes that the evidence would likely produce a new result if presented properly to the Court. At the very least, there exist extraordinary circumstances in these proceedings, in part due to the exigent time frame, which should relieve the Petitioner (and the children) from the operation of the judgment. See Affidavit of Roberto Grau, attached to this motion and incorporated and referenced as if fully set forth herein. (Ex. J)

STANDARD OF REVIEW OF THE 60(b) MOTION PENDING APPEAL

Does the motion raise substantial issues? Petitioner argues that the motion does raise substantial issues, which in the context of a Hague Convention abduction

proceeding, should be considered by the Court on the merits.

## PROCEDURAL BACKGROUND OF CASE

1.    Petitioner filed his Verified Petition for the Return of his Children to Germany on February 7, 2019.

2.    Seven days later, on February 14, 2019, with little or no time for discovery, a four hour hearing was held on the Verified Petition.

3.    This Court rendered its Order denying Petitioner's Verified Petition for the Return of his Children to Germany on February 20, 2019.

4.    Petitioner filed his notice of appeal on March 15, 2019.

5.    This motion is timely, and the Court has jurisdiction to review the motion pursuant to Fed. R. Civ. P. 62.1.

## LAST MOMENT OF PARENTS' SHARED INTENT

6.    After the four hour hearing, this court ultimately concluded that "after the family moved to the United States in 2015 and prior to July or August of 2018, it is clear that the Children's habitual place of residence was the United States...... .....thus, the question becomes whether the Children's residence was changed back to Germany in 2018. It was not."

7.    A great portion of the Court's consideration of the matter centered around the testimony of the Respondent, specifically her testimony relating to the

4

intentions of the parties while in Germany between July 15, 2018 and August 26, 2018, as well as her behaviors toward Petitioner during those months.

8.    The Court's conclusions, in part, were based upon its own finding of fact that "it was unclear whether Respondent told Petitioner that she would acquiesce to living with him in Germany."

9.    The Court was provided the following questions and answers while Respondent testified on cross examination:

Q:    Did you tell him in August, before you left for the States, did you advise him that you were not coming back to Germany?

A:    Yeah...

Q:    You heard your husband's testimony regarding your conversation of going back to close down the business and moving back to Germany. You heard that testimony?

A:    I heard it, yes.

Q:    Was that accurate what he said?

A:    No.

Q:    So are you saying that he was not speaking the truth when he testified that the two of your agreed that you would come back to Germany?

A:    Yes.

10.     In fact, Petitioner did speak truthfully. Respondent agreed with the

Petitioner to close down the business in the U.S. and relocate with the children back

to Germany. Indeed, all of her actions in Germany in the months of July and August,

2018 supported a shared intent to relocate back to Germany as an intact family unit

and to only briefly return to the United States to wind down the couple's cleaning

business.

11.     During the time Respondent was in Germany between

July 15, 2018 and August 26, 2018, Respondent took the following actions which

were completely inconsistent and incongruous with her sworn testimony at trial:

A)     she approved and procured the termination of her international health

insurance for Respondent and the children, which coverage would have ceased as

of November, 2018, when she returned to Germany. (Ex. A)

B)     she approved the enrollment of the two children in hockey/tennis

camp in Krefeld, Germany, effective January 1, 2019. (Ex. B)

C)     she affirmatively sought employment as a commercial clerk at Stahlbau

Axel Paul in Oberirsen, Germany and advised the employer that she would be

available to begin work on January 7, 2019. She was offered the employment based

upon her representations that she was returning to Germany to permanently relocate

with the family as of December, 2018, and she accepted the employment offer.

6

(Ex. C)

    D)    she sought to purchase a Mercedes automobile from Car Dealership Elegance in Dormagen, Germany. (Ex. D)

    12.    After returning to the United States in August, 2018, Respondent took the following additional actions which are also inconsistent with her sworn testimony at trial:

    E)    she referenced the cancellation of her gym membership in Orlando. (Ex. E)

    F)    she concurred with Petitioner in his efforts to locate a new, larger apartment for the family in Krefeld, Germany, to which she represented that she and the children were to relocate. (Ex. F)

    G)    she personally researched and located and approved the placement of the two boys in kindergarten school in Germany, namely the St. George's British International School and the ISR International School on the Rhine. (Ex. G)

    13.    Simply stated, the parties' last shared intent was to permanently reside again with the children in Germany. (Ex's. A-G, attached and incorporated as if fully set forth herein)

    14.    Particularly telling is the email sent from Respondent to Petitioner

on *September 6, 2018* after her return to the U.S., which states in reference to the enrollment of the children in school and the relocation back to Germany, the following:

> *"Dear Robbie,*
>
> *You're a sweetheart! Thank you for taking care of everything. I'm looking forward to our new place, Krefeld, here we come!*
>
> *I love you very much.*
>
> *Helen"* (Ex. G)

15.    The affidavits of six other persons, friends of the couple for many years, Florian Jansen, Daniel Schweigatz, Nils Weidner, Marcel Zimmer, Marvin Kurz and Marco Grau, were produced into evidence and they also confirmed the parties' last shared intent to relocate the family back to Germany.

16.    The Court's finding of fact that "It is unclear whether Respondent told Petitioner that she would acquiesce to his wishes...." is contradicted by the affidavits and the newly discovered evidence, which clearly proves that Respondent took all actions necessary to relocate the entire family back to Germany to live as a complete family unit.

17.    Both parties and the children are German citizens. Had the Petitioner known that the boys would be leaving Germany in August of 2018 and not returning,

8

he could have and would have sought a ruling from the German court, which would have prevented the Respondent from traveling out of Germany with the children. Germany would have considered the habitual residence of the children to have remained Germany, despite the family's travels to the United States in 2015 and thereafter. (See Ex. H, expert opinion of Dr. Kerstin Neithammer-Jurgens, attached and incorporated as if fully referenced herein.)[1]

18.     Through her own testimony at trial, Respondent admitted that she had contemplated divorce for years but did not ever discuss it with Petitioner. She ultimately secretly sought advice from counsel relating to divorce as early as February, 2018, yet through September of 2018, she continuously represented to the Petitioner and others her commitment to the family and the latest family plan to relocate back to Germany. Ex post facto, Respondent either changed her mind sometime after returning to the U.S. in 2018; or she deliberately misled the Petitioner into agreeing for his sons to travel back to the United States on August 26, 2018 from

---

[1]The Court's conclusions relating to when the children returned to Germany after 2015 is contradicted by the evidence of record. Between May 2015 and February 2018, the children lived in Germany from August 20, 2015 through October 3, 2015 and again in December 2016 through January 2017. They returned a third time in July, 2018, and, therefore, not only did they remain German nationals, they continued to be routinely exposed to both German and American culture, and at such a young age, would not acclimatize. Further, Germany remained the habitual residence. (Ex. H)

Germany. As argued above, had the Petitioner known what was to occur, he would not have permitted the children to travel out of their native country back to the U.S. The Court's finding that Petitioner is the one that changed his mind about the habitual residence of the children is not supported by actions of the Respondent nor the newly discovered evidence.

19.    The Hague Convention itself does not define "habitual residence," leaving the interpretation of the term to the judicial and administrative bodies of the contracting nations. *Mozes v. Mozes*, 239 F.3d 1067, 1071-72 (9th Cir. 2001). In determining a child's habitual residence, this circuit should look first to the shared intent or settled purpose of the persons entitled to determine the child's permanent home; as a secondary factor, it may consider the child's acclimatization to his or her current place of residence, but is not required to do so.

However, in discerning the parties' intentions, the trial court should look "specifically to the last moment of the parents' shared intent." *Mendez v. May*, 778 F.3d 337, 344 (1st Cir. 2015). Petitioner argues that Respondent's misrepresentations to the Court during her testimony precluded this Court from making its findings concerning the last moment of the parents's shared intent, clearly reflected in Ex.'s A-G. This Court concluded that "After the family moved to the United States in 2015 and prior to July or August 2018, it is clear that the Children's habitual place of

10

residence was the United States......Thus, the question becomes whether the Children's habitual residence was changed back to Germany in 2018..." Therefore, to reach its ultimate conclusion that "It was not", the Court is obligated to consider the parties' intent between July 15, 2018 and September 6, 2018, as that is the latest, objective evidence of the agreement of the parties as to the children and, therefore, the shared intent of the parents at that time. However, Respondent misrepresented these shared intentions to this Court during her testimony as shown by Ex.'s A-G.

20.   In fact, the true record of this case is replete with Respondent's own statements acknowledging and planning for the children's relocation to Germany with Petitioner. Respondent's statements were made not only during July and August of 2018 when the entire family was reunited in Germany but continued subsequent to her return to the United States, with her deceptive scheme in place.

21.   Even though apparently Respondent "changed her mind" after returning to the United States, the overwhelming objective evidence is that the last shared intent of the parties was for their sons to relocate permanently back to Germany. (Exhibits A-G). Therefore, there was a settled agreement and intent to move the children back to Germany as evidenced by the Exhibits, but specifically by the following statement on September 6, 2018 to Petitioner, that ***"I'm looking forward to our new place. Krefeld, here we come! I love you very much. Helen."***

## CONDITIONAL CONSENT TO RELOCATE

22.     As this Court found, the Petitioner's dream was to live in Orlando *as a family*. The finding that the habitual residence of the children had permanently changed in 2015 or thereafter is unsupported by other conclusions by the Court. Specifically, both Petitioner and Respondent testified that it was *their* dream to raise the Children in the United States. In addition, the *family* took action that comported with their intent to leave Germany. If the shared intent of the parties in 2015 was to live *as a family* and raise the children in the United States, that is indicative of a conditional consent to relocate and not a permanent shared intent to change habitual residence. Unilateral intent of a single parent will not vitiate a conditional consent nor will it suffice to change a child's habitual residence. *Calixto v. Lesmes*, 909 F.3d 1079, 1084 (11th Cir. 2018).

23.     *Hofmann v. Sender*, 716 F.3d 282 (2d Cir. 2013), concerned the issue of conditional consent and was cited by the 11th Circuit as well reasoned and persuasive in *Calixto*. In *Hofmann*, the father (a Canadian citizen) and the mother (a U.S. citizen) met in Canada, married in 2008, and had two sons, the first in 2009 and the second in 2011. In the fall of 2011, the family began to take steps to move to New York, where the mother's parents lived. They moved many of their possessions to the home of the mother's parents, made renovations to one of the house's rooms, opened

a joint bank account in New York, and transferred large sums of money into that account. *See id.* at 286-87.

The district court concluded that the move to New York was intended to be permanent, as the mother asserted, and not temporary, as the father had argued. *See id.* at 286. The district court also found, however, that "the parties believed that if the parties were relocating permanently to New York, they were doing it as a family." *Id.* at 287. (quotations and citations omitted). Even though "this condition may not have been expressly stated, it was understood by the parties, and it certainly was understood by the (father)." *Id.* (internal quotation marks omitted).

Throughout 2012, the father attempted unsuccessfully to achieve legal status in the United States. *See id.* at 288. Eventually, in September of 2012, the mother filed for divorce and kept the sons with her, to which the father responded by filing a petition under the Hague Convention. *See id.*

Relying on *Mota v. Rivera Castillo*, 692 F.3d 108 (2d Cir. 2012), the district court found that "although (the father) had consented to the children's removal to the United States, that consent was a conditional one, contingent upon his accompanying them and residing with them and (the mother) as a family in the United States." *Hofmann*, 716 F.3d at 289. The Second Circuit affirmed, agreeing that Canada remained the children's habitual residence. Quoting *Mota*, the Second Circuit

reiterated that "if the parents here did not agree that the children would live indefinitely in the United States regardless of their father's presence, it cannot be said that the parents "shared an intent" that New York would be the children's state of habitual residence." *Id.* at 293. (quotations and citation omitted). Although the parents had a shared intent to relocate to New York, "the extent to which that intent was shared was limited by (the father's) conditional agreement that the relocation was to be accomplished as a family." *Id.*

Conditional consent to a relocation is terminated, therefore, when the condition is not fulfilled nor realized. Again, the trial Court's finding that Petitioner herein changed his mind is not supported by the newly discovered evidence. If the consent in 2015 (or at any time) to travel to the United States had not been conditioned upon living as a family, then why would Respondent have to be untruthful to the Court in these proceedings? Perhaps because Respondent knew that there was never previously anything other than a conditional consent to relocate to the United States in 2015 and/or that the last shared intent of the parties was to relocate to Germany.

24.     The evidence at trial was unrebutted that Petitioner was obligated to return to Germany when his work in the U.S. concluded in January of 2018. Although Petitioner may be able to visit the United States, at that time he had to locate new employment opportunities to support the family, which was entirely dependent upon

14

his financial support. The trial Court's conclusion that "At this point (February 2018), the family had to decide whether to return to Germany or find another way to remain in the United States," supports a finding that there was only a conditional consent for the family to be in the United States. An unconditional, permanent agreement to relocate the children to the U.S. in 2015 or sometime thereafter would not yield a conclusion three years later in 2018 (when Petitioner returned to Germany) that *"the family* had to decide whether to return to Germany or find another way to remain in the United States." Had there been an unconditional consent to relocate, which Petitioner does not concede, it would not contemplate the children returning to Germany simply because Petitioner had returned. Yet the Court found that *the family* had to make a decision between Germany and the United States. And they did. (Affidavits and Ex.'s A-G).

25. That family decision was to relocate to Germany in 2018, and all of the newly discovered evidence supports a finding that the last shared intent of the parties was to relocate back to Germany with the children. Petitioner argues that the Court's finding that "However, at some point between February and August 2018, Petitioner changed his mind," is not supported by the newly discovered evidence, since as late as September 6, 2018, the Respondent was moving back to Krefeld as argued above and as she stated in her email to Petitioner. ***"I'm looking forward to our new place.***

*Krefeld, here we come! I love you very much. Helen."* (Ex. G)

26.     Petitioner also argues that although referencing *Calixto* as authority, this Court did not reach the ultimate issue of whether or not the consent to move as a family to the United States was conditional. To be sure, the Court concluded that the dream was to live as a *family* in the United States. It further found that the parties *both* agreed to find a way to stay in the United States for the "foreseeable future." The Court ultimately concluded that the Petitioner "changed his mind," however, in doing so, had no information relating to the last shared intent of the parties, as argued above. Had the Court had the benefit of Ex.'s A-G, it would have clearly shown that keeping the family together was always a condition of the Petitioner, and that it was the Respondent who changed her mind about the agreed relocation to Germany, deceiving not only the Petitioner, but also this Court.

27.     Because this Court deduced that the dream was to live as a *family* in the United States, and also concluded that *both* (parties) agreed to find a way to stay in the United States for the "foreseeable future," it was necessary for this Court to either credit (or discredit) the testimony and pleadings of Petitioner as to his conditional consent. A single-sentence conclusion that Petitioner "changed his mind" is not supported by the newly discovered evidence, nor is the statement supported by the other conclusions within the Court's Order.

## VISA STATUS

28.    Further, at each decisive moment, the temporary and conditional nature of the family's nonimmigrant visa status–or their presence in the United States in violation of the Immigration and Nationality Act (INA)–contributed to the tentativeness of any plans by Petitioner and Respondent to abandon their residence in Germany and resettle in the United States, just as in *Chafin v. Chafin*, 742 F.3d 934, 939 (11th Cir. 2013), and *Ruiz v. Tenorio*, 392 F.3d 1247, 1255 (11th Cir. 2004).

In September 2015, the family came to the States with L visas due to Petitioner's temporary transfer by Tartech Eco Industries AG to their Masschusetts affiliate, knowing that their via status was only valid for a period of 3 years or until Petitioner completed his work assignment, whichever was shorter. *See* 8 C.F.R. §§ 214.2(l)(7)(i)(A)(2), (l)(11).

On January 4, 2018, Petitioner returned to Germany because his work assignment ended when the company finished the ash recycling project it had contracted to do. That left Respondent and the children in violation of status—and subject to deportation—during the six months until they departed the States on July 14, 2018. *See* 8 C.F.R. § 214.2(l)(7)(ii). As Petitioner testified, "the whole family lost [our] visa status." (Tr. at 38). With Petitioner leaving the States and the threat of

deportation hanging over Respondent and the children, the parents' could not have arrived at a "settled intent" to remain in the United States.

From July 15 to August 26, 2018, when the family was together in Germany, their ability to return to the States was unresolved. During that period, Respondent and the children applied for E-2 investor visas. For an E-2 visa to be approved by a U.S. consulate abroad, and for a U.S. Customs and Border Protection (CBP) at the officer at the airport to make the final decision to admit a foreign national in E-2 status, the applicant must show an "unequivocal" intent to depart the United States upon the expiration or termination of E-2 status, which is granted for a two-year period. 9 Foreign Affairs Manual (FAM) 402.9-4(C) (Apr. 6, 2018). *See* 8 C.F.R. § 214.2(e)(2)(iii), (e)(5). Further, the Form DS-160, Nonimmigrant Visa Application, filed with the Consulate and subject to review by the CBP officer asks "Have you ever ... violated the terms of a U.S. visa?" The record is silent as to whether Respondent answered truthfully that she and the children had previously been in the United States in violation of the terms of their L visas. Many or most consular officers and CBP officers, if they were aware of such a violation, would deny an E-2 application on the basis that the applicant failed to prove an "unequivocal" intent to depart the United States upon expiration or termination of E-2 status. In Germany

18

between July 15 and August 26, 2018, with these unresolved visa issues, Petitioner and Respondent could not have arrived at a "settled intent" to reside in the States.

29.     In summary, the family never applied for permanent residency status in the United States. At no time did the family's U.S. visa status support formation by Petitioner and Respondent of a settled intent to abandon their residence in Germany and resettle in this country. On the contrary, after January 4, 2018, when Respondent and the children became subject to deportation for the violation of the INA, any such intent was highly tentative at best. Petitioner has attached the expert opinion of immigration attorney and immigration and nationality law professor, Gary Nathan Chodorow, in support of this motion. (Ex. I, attached and incorporated as if fully set forth herein). The conditional nature of the E-2 Visa is inconsistent with a change in habitual residence of the children, as they would not be able to remain permanently in the United States at the time of expiration of the E-2 Visa, and extensions of the visa are not guaranteed.

## FURTHER ANALYSIS

30.     The Petition was filed on February 7, 2019. Seven days later, with no opportunity for discovery, a trial was ordered on this matter. Petitioner traveled to the United States from Germany, where he is employed full time.

31.     Rule 60(b)(3) affords relief from final judgments upon a showing of

"fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." There exists clear and convincing evidence in this matter that the Respondent was untruthful with this Court about her actions and intentions while in Germany. On cross examination, she swore to the Court that Petitioner was untruthful when he testified that Respondent had agreed to relocate back to Germany. In fact, it was Petitioner who was patently truthful about this matter. Because Respondent was untruthful with the Court, the Petitioner was unable to make a full and fair presentation of his case. Had Respondent not perjured herself during this case, the Petitioner would have been able to fully present the matter concerning the last shared intent of the parties, which was to relocate to Germany. Had the Court known or been made aware of the true objective evidence of the last shared intent, it would have been obligated to consider the exhibits A-G in making its determinations. Petitioner was deprived of a full and fair hearing due to untruthful statements of the Respondent, as well as the expedited nature of the proceedings. The seven day notice for trial left little or no time for Petitioner to develop the case nor translate documents. The exigent nature of the trial rendered the inability to obtain and translate the documents excusable pursuant to 60(b)(1).

32.    This particular case presents novel and extraordinary circumstances for

the trier of fact. Unfortunately, the Court was deprived of the opportunity to consider this case on its true merits.

33.     While Petitioner acknowledges the need for finality in litigation, he asserts that this Court should exercise its discretion to grant relief under any of the sections of Fed. R. Civ. P. 60(b) that may be applicable. Petitioner argues that the parties and the children are German citizens. They have no immigration status which permits them to reside in the United States permanently and have never made application for permanent residency in the United States. The Respondent's E-2 Visa will expire.

34.     Had the Petitioner known the true motives of the Respondent, the German courts would have prevented the children from traveling back to the United States from Germany, their native country, in 2018. Petitioner argues that the Hague treaty is an international agreement, and that the United States should exercise comity in dealing with citizens of other signatory countries who come before this Court with unclean hands. See *Blondin v. Dubois*, 189 F.3d 240 (2d Cir. 1999)

CONCLUSION

35.     The Hague Convention is intended "to restore the status quo ante and to deter parents from crossing international boundaries in search of a more sympathetic court." *Silverman v. Silverman*, 267 F.3d 788, 791-92 (8th Cir. 2001) (quoting *Rydder*

21

*v. Rydder*, 49 F.3d 369, 372-73 (8th Cir. 1995)); *see also Lops v. Lops*, 140 F.3d 927,

936 (11th Cir. 1998); *Friedrich v. Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996);

*Ohlander v. Larson*, 114 F.3d 1531, 1541 (10th Cir. 1997) (Convention's intent is "to

ensure that rights of custody and of access under the law of one Contracting State are

effectively respected in other Contracting States" and "to remove forever the

incentive for a parent to flee across borders to obtain a favorable ruling.") (citing

Letter of Transmittal from President Ronald Reagan (Oct. 30, 1985), reprinted in 51

Fed. Reg. 10494, 10,495 (1986); Pub. Notice 957, 51 Fed. Reg. 10494, 10505

(1986)). Comity is at the heart of the Hague agreement between contracting states.

36.     Respondent engaged fully in a shared plan to relocate back to Germany.

She actually made the trip to Germany with the children. Once there, she sought

employment, she sought the purchase of an automobile, she accepted an employment

offer, and she researched and approved the enrollment of the children in

hockey/tennis camp. Many of Respondent's contacts, including her new employer,

Stahlbau Axel Paul, took action based upon Respondent's representations of her

relocation back to Germany with the children. Respondent returned to the United

States for a brief visit to wind down the cleaning business. She wrote to Petitioner as

late as September 6, 2018, representing how marvelously happy she was to be

returning with the children to live in Germany. Yet she told a much different version

of events to this Court, accusing the Petitioner of being untruthful with the Court, when in fact, it was the Respondent that was untruthful.

37.    This apparent perpetration of "relocation by deception" occasioned by the Respondent on the Petitioner and this Court is just the type of deception the Hague treaty is intended to protect against. Respondent's behavior and her unilateral method of "self-help" is repugnant to the premises upon which the Hague treaty was enacted and implemented. "When a respondent engages in deception to effectuate a child's removal and where the petitioner engages in extensive post-removal actions to secure that child's return, such facts militate strongly against a finding of consent." *Baran v. Beaty*, 479 F. Supp. 2d 1257, 1269 (S.D. Ala. 2007), *aff'd*, 526 F.3d 1340 (11th Cir. 2008) (citing *Garcia v. Angarita*, 440 F. Supp. 2d 1364, 1380 (S.D. Fla. 2006) ("The evidence of the deception Respondent perpetrated on Petitioner regarding the children's departure, as well as Petitioner's testimony and the actions he took to secure their return under the Hague Convention overwhelmingly supports the finding that he did not consent to their permanent residence in the United States.")

38.    WHEREFORE, the Petitioner seeks an order vacating the prior Order, and he seeks the return of the children to Germany. Alternatively, Petitioner seeks an opportunity to present the newly discovered evidence of the true last shared intent of the parties to the Court, as well as the United States immigration laws, which affect

23

the ability of the Respondent and children to remain legally in the United States and contradict a finding of a permanent change of habitual residence.

39.    <u>The district court has the discretion to grant relief under any of the Fed. R. Civ. P. 60(b) sections as justice requires.</u>

MOTION FOR INDICATIVE RULING

Because an appeal is pending, Petitioner seeks an indicative ruling pursuant to Fed. R. Civ. P. 62.1 on this motion.

<b><u>CERTIFICATE OF SERVICE</u></b>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic filing to Patricia M. Lee, Esq. Attorney for Respondent, and to John L. Urban, Esq., Attorney for Respondent, on this ___ day of April, 2019.

CARMEN R. GILLETT, PLLC
1845 Morrill Street
Sarasota, FL 34236
Phone: (941)366-9826
Attorneys for Petitioner
Carmen R. Gillett, Esq.
Florida Bar No. 0375446
Shanna Hourihan, Esq.
Florida Bar No. 0030396

24